**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

| | |
|---|---|
| | : |
| **GREENLINE EXPRESS** | : |
| **TRANSPORTATION, INC**, | : |
| a California corporation, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No.: _____ |
| | : |
| **HIGH PLAINS LOGISTICS** | : |
| **CONSULTING LLC**, | :              **VERIFIED COMPLAINT** |
| a Virginia limited liability company, | : |
| | : |
| **R/A :**  Burlong Defendant Mr. Epps III | : |
|           1821 E Nine Mile Rd. | : |
|           Highland Springs, VA 23075 | : |
| | : |
| **BURLONG EPPS III**, | : |
| an individual, | : |
| | : |
| and | : |
| | : |
| **NATHAN GIBBS**, | : |
| an individual, | : |
| | :              **TRIAL BY JURY DEMANDED** |
| Defendants. | : |
| | : |

_____

### PLAINTIFF'S VERIFIED COMPLAINT

COMES NOW, Plaintiff, Greenline Express Transportation, Inc., ("Plaintiff"), by and through its undersigned counsel, and moves this Honorable Court for judgment against Defendants, High Plains Logistics Consulting, LLC ("High Plains"), Burlong Epps III, ("Mr. Epps") and Nathan Gibbs ("Mr. Gibbs"; each a Defendant, collectively "Defendants"), on the grounds and praying for the relief hereinafter set forth:

1

## Summary of the Action

1.  This is an action for defamation and tortious interference with business expectancy arising out of the Defendants' false and defamatory posts about Plaintiff's trucking business on the website Carrier411.com. Defendants posted three separate negative and false reviews of Plaintiff, called "FreightGuards" in the course of several hours, all arising out of the same load booking, which Defendants themselves cancelled. Defendants falsely accused Plaintiff of engaging in "unauthorized re-brokering of shipment; fraudulent activity; [and] unethical or deceptive business practices." Plaintiff did not re-broker the shipment in question or have any intent to do so; nor did it engage in any fraudulent activity or unethical or deceptive business practices.

2.  Carrier411.com is used by freight brokers to vet potential carriers and the FreightGuard Reports resulted in a "blacklist" of the Plaintiff and its exclusion from potential loads. The Defendants' false and defamatory postings have not only caused Plaintiff to lose potential loads; they also caused Plaintiff to lose existing and repeat customers; and caused and continue to cause significant damage to Plaintiff's business reputation and business expectancies.

## Parties

3.  This action arises under the laws of the Commonwealth of Virginia.

4.  Plaintiff is a corporation incorporated under the laws of the State of California.

5.  Defendant High Plains is a Virginia limited liability company, having the principal office address and registered office address at 1821 East Nine Mile Road, Highland Springs, VA 23075, located in Henrico County.

6.  Defendant Mr. Epps is the registered agent for Defendant High Plains and its owner and manager. Mr. Epps resides at 3440 Crumps Run Ct., Quinton, VA 23141, located in New Kent County, Virginia.

7.   Defendant Mr. Gibbs is employed by Defendant High Plains. Upon information and belief, Mr. Gibbs is a resident of the State of Ohio based on his phone number, 513-218-9927, noting that the area code 513 originates from Ohio.

## Jurisdiction and Venue

8.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists. Plaintiff is a California corporation and a citizen of the State of California. Defendant High Plains is a Virginia limited liability company and a citizen of Virginia. Upon information and belief, Defendant High Plains is a single-member limited liability company with Defendant Mr. Epps as the sole member. Defendant Mr. Epps is the owner of, executive managing member, and vice president of operations for Defendant High Plains and is a resident and citizen of the Commonwealth of Virginia.  Defendant Mr. Gibbs is employed by Defendant High Plains as a transportation agent and upon information and belief is a resident and citizen of the State of Ohio based on his phone number, 513-218-9927, noting that the area code 513 originates from Ohio. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

9.   This Court has *in personam* jurisdiction over Defendants in this action pursuant to Fed. R. Civ. P. 4(k)(1)(A) and under Va. Code § 8.01-328.1(A)(1), (3), and (6), in that High Plains is a Virginia limited liability company, maintains its principal office in Virginia, and transacts business in Virginia. Defendant Mr. Epps is a resident of Virginia and is an owner and vice president of operations for High Plains. Defendant Mr. Gibbs is an employee of High Plains and made the false and defamatory statements at the core of this action in the course of his agency, acting as a transportation agent on behalf of High Plains.

3

10. Venue is proper in the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), and L. Civ. R. 3(B)(1) and (C), because a substantial part of the events or omissions giving rise to the claims set forth in this Verified Complaint occurred in this judicial District and in this division and Defendant High Plains has its principal office within this division of this District (specifically, in Highland Springs, Virginia—located within Henrico County).

**<u>Statement of Facts</u>**

11. Plaintiff Greenline is a freight shipping and trucking company based in California that ships freight across the United States.

12. High Plains is a freight broker that works as an intermediary between a shipper and a freight service providers (e.g., Plaintiff).

13. High Plains holds itself as a company "[w]ith over 100 years of combined experience in the transportation field". *See* https://www.highplainslogisticsllc.com/services.

14. On or about October 26, 2022, Plaintiff and Defendant High Plains entered into a Rate and Load Confirmation Agreement ("<u>Agreement</u>") for the shipment of cucumbers from Willoughby Farms in Gordon, Alabama to Hermann Pickles in Garrettsville, Ohio (**Exhibit 1**).

15. Pursuant to the Agreement, Plaintiff's truck driver was scheduled to pick up the load on October 27, 2022 at 2:00 pm Central time. (***Id***.)

16.  Gordon, Alabama, is in the Central time zone, which is two hours ahead of the Pacific time zone and one hour behind the Eastern time zone.

17. Plaintiff's offices and its employees are located in California, which is in the Pacific time zone.

18. Upon information and belief, Defendant Mr. Gibbs works remotely from Cincinnati, Ohio, which is in the Eastern time zone.

19. On October 27, 2022, at approximately 8:30am Eastern time (7:30am Central time), Defendant Mr. Gibbs called the driver who was assigned to the load on the driver's cell phone – 6.5 hours before the scheduled pick-up time of 2:00pm.

20. The driver had been sleeping at the time of the call, taking his mandatory 10-hour rest period in compliance with Federal Motor Carrier Safety Regulations.

21. The driver picked up and was confused as to why Defendant Mr. Gibbs was calling him at 8:30am (7:30am Central time), 6.5 hours before the scheduled pickup time of 2:00pm. The driver hung up on Defendant Mr. Gibbs.

22. Defendant Mr. Gibbs then texted the driver at 7:33am Central time: "You know what, you just lost your load to Cleveland. Asshole." (**Exhibit 2**).

23. Defendant Mr. Gibbs then called the driver three additional times at 7:36am Central time.

24. Defendant Mr. Gibbs then called Brad Saeger, a part-owner of Plaintiff ("Mr. Saeger"). At the time of the call, it was right after 5:30am in California and Mr. Saeger was not available. Mr. Saeger has explained the time difference to Defendant Mr. Gibbs the previous day and informed him that he is not available before 6:30am Pacific time.

25. Defendant Mr. Gibbs then called the Plaintiff's office phone and spoke with Mike Dutov, also a part-owner of Plaintiff ("Mr. Dutov"). Defendant Mr. Gibbs yelled at Mr. Dutov, said that he was cancelling the Agreement with Plaintiff, and that he would be submitting a FreightGuard report against the Plaintiff.

26. At 5:39am Pacific time (8:39am EST) on October 27, 2022, which is six minutes after Defendant Mr. Gibbs texted the driver calling him an "asshole" and before he had the opportunity to speak with Mr. Saeger, Defendant Mr. Gibbs posted the first FreightGuard report (attached as **Exhibit 3**).

27. Defendant Mr. Gibbs falsely stated and reported that Plaintiff was "no show and no call," "cancelled after accepting load;" engaged in "fraudulent activity," and "unethical or deceptive business practices. (**Id**.)

28. These statements are false. At the time the first FreightGuard report was posted, the loading time of 2:00pm Central time was still nearly 6.5 hours away. It is impossible that Plaintiff was a "no show and no call" nearly 6.5 hours before the scheduled pick up time.

29. Additionally, it was Defendant Mr. Gibbs who cancelled the load, texting the driver that he had just lost his load (**Exhibit 2**). Plaintiff also did not engage in any action that was fraudulent, unethical, or deceptive.

30. Shortly thereafter, at 6:48am PST (9:48am EST), Defendant Mr. Gibbs posted a second FreightGuard report against Plaintiff (attached as **Exhibit 4**).

31. In the second FreightGuard report, Defendant Mr. Gibbs stated that Plaintiff was engaged in "unauthorized re-brokering of shipment;" "fraudulent activity;" and "unethical or deceptive business practices." (**Id**.)

32. These statements are false. Plaintiff was not engaged in double brokering or re-brokering the load. Further, Plaintiff had no intention of engaging in any double-brokering or re-brokering practice nor was the Plaintiff engaged in any fraudulent activity, unethical business practices, or deceptive business practices.

33. Further, Defendant Mr. Gibbs made the following statements: "DOUBLE BROKER. DISPATCH TOLD ME THE TRUCK WAS ONSITE. I HAD THE FARMER LOOKING FOR THE DRIVER ONSITE AND HE WAS NO WHERE TO BE FOUND." (**Id**.)

34. These statements are false. "Dispatch" did not tell Defendant Mr. Gibbs that the truck was onsite because the load pickup was not until 2:00pm CST (which is more than 5 hours from

the time of the second FreightGuard).

35. Double brokering or re-brokering is a particularly damaging and serious allegation against the Plaintiff. Double brokering is an illegal and highly unethical practice where freight carriers subcontract a load to another carrier for less than the rate agreed on with the broker or shipper, and then keep the difference. Among other things, double brokering causes issues with insurance claims if the shipment is damaged or destroyed in transit, as the insurance company only provides coverage on the work of the original carrier, not the subcontracted double broker. The practice is widely condemned in the trucking industry and considered a "scam." *See* https://www.freightwaves.com/news/freight-fraud-burgeoning-double-brokering-scheme-like-game-of-whack-a-mole for additional background.

36. Shortly thereafter, at 9:11am PST (12:11am EST), Defendant Mr. Gibbs posted a third FreightGuard report against Plaintiff (attached as **Exhibit 5**).

37. Defendant Mr. Gibbs once again made false statements that Plaintiff "back-solicited shipper;" and engaged in "fraudulent activity;" and "unethical or deceptive business practices." Further, Defendant Mr. Gibbs made the following false statements: "CARIER [sic] WAS TAKEN OFF A LOAD BECAUSE THEY LIED ABOUT THE LOCATION OF THE TRUCK AND FROM ALL EVIDENCE, THEY HAD NO DRIVER." (*Id*.)

38. Back-soliciting is the illegal and highly unethical practice of the carrier directly contacting a shipper and engaging them directly, without the services of the broker. In essence, this practice interferes with the broker's engagement with a client.

39. These statements are false. Plaintiff was not engaged in back-soliciting the shipper nor had any intention to back-solicit the shipper, nor was the Plaintiff engaged in any fraudulent activity, unethical business practices, or deceptive business practices.

40. Further, Plaintiff did not lie about the location of the truck and Plaintiff did have a driver ready to pick up the load until Defendants cancelled the load.

41. At the time the third FreightGuard was posted, it was 11:41 CST, just over two hours until the originally scheduled pickup time.

42. At the time the third FreightGuard was posted, it was 11:41 CST, approximately 4.5 hours after Defendant Mr. Gibbs himself cancelled the load.

43. Upon information and belief, Defendant Mr. Gibbs deleted the first FreightGuard report (**Exhibit 3**) at some point because the first FreightGuard report is not on Carrier411.com as of the date of this Verified Complaint.

44. The second FreightGuard report is on the Carrier411.com website in its original form. (**Exhibit 6**).

45. At some point after posting the third FreightGuard report, Defendant Mr. Gibbs edited the third FreightGuard report, removing the statements "back-solicited shipper" and "fraudulent activity." Defendant Mr. Gibbs also deleted the statement "DON'T TRUST THESE GUYS..SNAKES IN THE GRASS" and replaced it with "ON DO NOT USE." (**Exhibit 7**).

46. At 7:26am PST on October 27, 2022, Plaintiff's part-owner Mr. Saeger emailed Defendant Mr. Gibbs, expressly addressing and disputing the double-brokering allegation among other things. (**Exhibit 8**.)

47. The same day that Defendant Mr. Gibbs posted the false and defamatory statements against Plaintiff, at 9:52pm PST on October 27, 2022, Plaintiff's part-owner Mr. Saeger sent an email to Defendant Mr. Epps. (**Exhibit 9**).

48. In the email, Mr. Saeger explained the situation with Defendant Mr. Gibbs and that he filed three separate FreightGuard Reports against Plaintiff arising out of one load. He further put

8

Mr. Defendant Mr. Epps on notice that his employee/agent had made false and defamatory statements, that the statements were already causing Plaintiff to lose business and loads and demanded that the FreightGuards be removed.

49. Defendant Mr. Epps did not respond to the email or otherwise communicate with Mr. Saeger, Mr. Dutov, or any other person associated with Plaintiff.

50. Defendant Mr. Epps has taken no action to remove the false and defamatory FreightGuard Reports posted by his employee and on behalf of his company through the date of this Verified Complaint.

51. In December 2022, Plaintiff engaged reportdown411.com and its attorneys to send a cease-and-desist letter to Defendants High Plains and Defendant Mr. Epps. Through the date of this Verified Complaint, there has been no response from the Defendants or their counsel.

52. The second FreightGuard report (**Exhibit 6**) and third FreightGuard report (**Exhibit 7**) have not been removed by the Defendants from the Carrier411.com website as of the date of this Verified Complaint.

### Plaintiff Suffered and Continues to Suffer Lost Business Damages Due to the False and Defamatory FreightGuard Reports on Carrier411.com

53. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

54. Carrier411.com is a website that allows freight brokers to submit FreightGuard Reports against truckers and trucking companies, alleging various unethical business practices, malfeasance, and fraud.

55. Freight brokers across the United States rely on Carrier411.com to screen potential carriers and determine whether to do business with a particular carrier.

56. Brokers frequently refuse to do business with or book loads with trucking companies and carriers who have FreightGuard Reports posted against them, regardless of whether the report is

true or false.

57. Certain brokers automatically disqualify any carrier with a FreightGuard posted against them.

58. Carrier411.com does not independently confirm the truth of the broker's allegations or perform any investigation into the matter before allowing a post on its website.

59. Carrier411.com does not allow a carrier or trucking company like Plaintiff to review brokers or request that a false review be taken down.

60. Carrier411.com only permits brokers to register for an account, log in, or otherwise access its database.

61. Only brokers that posted/submitted the FreightGuard report have the ability to remove the FreightGuard.

62. Through the date of this Verified Complaint, Defendants have not removed the false and defamatory FreightGuard Reports.

63. Defendants continue to be responsible for their false and defamatory statements and the damages that they have caused and continue to cause.

64. Defendants knew their statements in the report to be false and defamatory and have been put on notice of this fact multiple times by Plaintiff.

65. Through the date of this Verified Complaint, Plaintiff has lost over $250,000 in potential loads and expected business. A number of brokers have declined engaging with Plaintiff specifically citing the FreightGuards posted by Defendant Mr. Gibbs on behalf of Defendant High Plains.

66. Additionally, the FreightGuard Reports have damaged Plaintiff's business reputation, business expectancies, ability to get freight hauling contracts, and resulted in other future

damages that continue to accrue in an amount to be determined at trial.

**COUNT I (Defamation - Libel Per Se - Against Defendants High Plains and Mr. Gibbs)**

67. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

68. Plaintiff, at all times prior to the posting of the FreightGuard Reports, enjoyed a good business reputation in the trucking industry.

69. Defendant Mr. Gibbs (individually and on behalf of High Plains) wrote and submitted three separate electronic FreightGuard Reports on Carrier411.com making false statements about Plaintiff (including but not limited to the fact that they had double-brokered the load) knowing these statements to be false or with reckless disregard for whether they were true or false.

70. Specifically, the following statements are false factual statements in the first FreightGuard Report (**Exhibit 3**):

a.  No Show and No Call;

b.  Cancelled after accepting load;

c.  Fraudulent activity;

d.  Unethical or Deceptive Business Practices.

71. Specifically, the following statements are false factual statements in the second FreightGuard Report (**Exhibits 4 and 6**):

a.  Unauthorized re-brokering of shipment;

b.  Fraudulent activity;

c.  Unethical or deceptive business practices;

d.  "DOUBLE BROKER. DISPATCH TOLD ME THE TRUCK WAS ONSITE. I HAD THE FARMER LOOKING FOR THE DRIVER ONSITE AND HE WAS NO WHERE TO BE FOUND."

72. Specifically, the following statements are false factual statements in the third (original) FreightGuard Report (**Exhibit 5**):

   a. Back-solicited shipper;

   b. Fraudulent activity;

   c. Unethical or deceptive business practices.

   d. "CARIER [sic] WAS TAKEN OFF A LOAD BECAUSE THEY LIED ABOUT THE LOCATION OF THE TRUCK AND FROM ALL EVIDENCE, THEY HAD NO DRIVER."

73. Specifically, the following statements are false factual statements in the third (edited) FreightGuard Report (**Exhibit 7**):

   a. Unethical or deceptive business practices.

   b. "CARRIER WAS TAKEN OFF A LOAD BECAUSE THEY LIED ABOUT THE LOCATION OF THE TRUCK AND FROM ALL EVIDENCE, THEY HAD NO DRIVER."

74. Defendant Mr. Gibbs published the FreightGuard Reports against Plaintiff to the Carrier411.com website, where they are accessible to and viewable by other brokers.

75. Defendant Mr. Gibbs published the FreightGuard Reports on behalf of Defendant High Plains.

76. Defendant Mr. Gibbs knew that the statements in the FreightGuard Reports about Plaintiff are false.

77. Defendant Mr. Gibbs knew the statements in the FreightGuard Reports about the Plaintiff were false or recklessly disregarded the falsity of such statements because he posted the FreightGuard Reports before the scheduled pickup time and accused Plaintiff of double-

brokering, back-soliciting, and lying about the location of the truck without any evidence.

78. Defendant Mr. Gibbs had no evidence to support his statement that Plaintiff was involved in "double-brokering."

79. Defendant Mr. Gibbs had no evidence to support his statement that Plaintiff was involved in "back-soliciting."

80. Defendant Mr. Gibbs had no evidence to support his statement that Plaintiff had lied about the location of the truck or that Plaintiff had no driver.

81. Additionally, Defendant Mr. Gibbs had no evidence to support Plaintiff engaged in any fraudulent or unethical or deceptive business activity.

82. Defendant Mr. Gibbs' statements were made with malicious intent, as he posted three separate FreightGuard Reports on the same day, about the same load, deleted one of the Reports and edited another report. All of the FreightGuard Reports were posted before the scheduled pickup time for the load in question. Further, Defendant Mr. Gibbs was the one who cancelled the load with the Plaintiff well before the scheduled pickup time.

83. Defendant Mr. Gibbs spoke with Plaintiff's part-owner Mike Dutov on the morning of October 27, 2022, and was assured that the driver was in fact available for the scheduled load.

84. Additionally, Defendant Mr. Gibbs received an email from Plaintiff's other part-owner, Mr. Saeger, on October 27, 2022, expressly addressing the double broker statement as false. (**Exhibit 8**).

85. Defendant Mr. Gibbs' act of submitting the false and defamatory FreightGuard Reports constitutes libel per se under Virginia law.

86. The false and defamatory FreightGuard Reports have caused numerous freight brokers to stop doing business with Plaintiff, decline loads, and otherwise redirect their business to other

carriers, specifically citing the FreightGuard Reports as the reason.

87. Additionally, the statement that Plaintiff "double brokered" the load is especially damaging, as it is an allegation that Plaintiff committed a crime and is a particularly serious allegation in the trucking industry, equivalent to calling Plaintiff's business a "scam".

88. Defendant High Plains is liable for the false and defamatory statements of its employee Defendant Mr. Gibbs because Defendant Mr. Gibbs posted the FreightGuard Reports in the course of his agency and listed High Plains on the FreightGuard Reports.

89. Further, Defendant High Plains was aware of Defendant Mr. Gibbs' statements through Mr. Saeger's email to Defendant Mr. Epps on October 27, 2022 (**Exhibit 9**), as well as the cease and desist letters sent to Defendant Mr. Epps. Yet Defendant High Plains did nothing to remove its employee's false and defamatory statements against Plaintiff.

90. In addition to damages from lost loads and business, unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages from lost loads and declined business revenue, as well as irreparable harm to its professional reputation.

91. In addition to compensatory damages, the aforementioned acts of Defendants were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

**COUNT II (Tortious Interference with Business Expectancy – Against All Defendants)**

92. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

93. Plaintiff operates a trucking company that obtains work and books loads from brokers who often choose or reject trucking companies based upon information found on the Carrier411.com website, where brokers may submit FreightGuard Reports that function as reviews of trucking companies like Plaintiff.

94. Plaintiff has a reasonable expectation of booking loads with existing and prospective customers, as it has done in the past.

95. Defendants knew about Plaintiff's business expectations, yet Defendant Mr. Gibbs posted the false and defamatory FreightGuard Reports on behalf of Defendant High Plains to induce Plaintiff's prospective customers not to enter contracts with Plaintiff by defaming their business reputation and falsely accusing them of illegal and unethical conduct.

96. Defendant Mr. Epps had notice of the false and defamatory FreightGuard Reports that Defendant Mr. Gibbs posted on behalf of Defendant High Plains.

97. Defendant Mr. Epps was copied on the FreightGuard Reports at his email burt_epps@msn.com. (**Exhibits 3, 4, 5, 6, 7**.)

98. Defendant Mr. Epps also received an email from Brad Saeger on October 27, 2022, requesting that the false and defamatory FreightGuard Reports be removed. (**Exhibit 8**).

99. However, Defendant Mr. Epps took no action to direct Defendant Mr. Gibbs to remove the FreightGuard Reports, despite being copied on the FreightGuard report emails, receiving the email from Mr. Saeger on October 27, 2022 and subsequently receiving the cease and desist letter from the attorneys at reportdown411.com.

100.     The FreightGuard Reports and the false and defamatory statements therein intended to harm Plaintiff's current and prospective economic relations, business, and contracts with its clients.

101.     The FreightGuard Reports had their intended damaging effect. Brokers and companies that Plaintiff worked with in the past and expected additional business from have refused to do business with Plaintiff.

102.     There is no justification for the Defendants' malicious and willful interference

with Plaintiff's prospective business relations.

103.       The prospective contracts for loads with the brokers that declined business with the Plaintiff were worth over $250,000.00 and would have been beneficial to Plaintiff but for the Defendants' unjustified and wrongful interference.

104.       Additionally, and due to the Defendants' aforesaid interference with Plaintiff's customers, certain brokers that have done repeat business with Plaintiff in the past are no longer doing business with Plaintiff at all.

105.       The damages from lost prospective business opportunities continue to accrue through the date of this Verified Complaint and the full number of damages will be determined by the jury at trial.

106.       Defendants' misconduct was willful, wanton, and malicious. Plaintiff is entitled to an award of punitive damages sufficient to punish Defendants and deter them and others similarly situated from engaging in such misconduct in the future.

107.       In addition to compensatory damages, the aforementioned acts of Defendants were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

**COUNT III (Respondeat Superior – Against Defendants High Plains and Mr. Epps)**

108.       Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

109.       Defendant Mr. Gibbs was at all relevant times an agent of Defendant High Plains.

110.       Defendant Mr. Gibbs engaged Plaintiff's services as carrier on behalf of Defendant High Plains.

111.       Defendant Mr. Epps is the owner, executive managing member, and vice

16

president of operations for Defendant High Plains.

112.     Defendant Mr. Gibbs posted the FreightGuard Reports against Plaintiff on behalf of Defendant High Plains, stating in the Reports that the report was submitted by "Nathan Defendant Mr. Gibbs High Plains Logistics Consulting, LLC." (**Exhibits 3, 4, 5, 6, 7**.)

113.     Defendant Mr. Epps was aware of the FreightGuard Reports posted on behalf of High Plains Logistics, as he was copied on the FreightGuard Report emails. (***Id***.)

114.     Defendant Mr. Epps was also made aware of the FreightGuard Reports and their falsity when he received an email from Brad Saeger on October 27, 2022. (**Exhibit 9**).

115.     Despite having notice, Defendant Mr. Epps did not take any action to direct Defendant Mr. Gibbs to remove the FreightGuard Reports, nor did Defendant Mr. Epps otherwise take any action to address the false and defamatory statements made on by Defendant Mr. Gibbs on behalf of Defendant High Plains.

116.     Plaintiff suffered extensive lost load and business reputation damages due to the actions of Defendant High Plains as well as by Defendant Mr. Gibbs in his role as agent for the Defendant High Plains.

117.     In addition to compensatory damages, the aforementioned acts of Defendant High Plains and Mr. Epps were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

## COUNT IV (Injunctive Relief – Against All Defendants)

118.     Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

119.     As a direct and proximate cause of Defendants' ongoing wrongful acts, Plaintiff

suffered and will continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

120.　　Plaintiff has no adequate remedy at law to compensate it for the continuing injuries inflicted by Defendants and such reputational and business injuries will continue unless and until enjoined by this Court.

121.　　Defendants will not suffer any injury if they are enjoined from posting and maintaining false and defamatory statements against Plaintiff.

122.　　The public interest favors enjoining the Defendants from publishing and maintaining false statements about Plaintiff's business that tend to mislead other brokers and damage Plaintiff's business prospects and reputation.

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on her behalf against Defendants, jointly and severally, as applicable;

B. Award Plaintiff compensatory damages in amount greater than $250,000.00 against Defendants, jointly and severally, as applicable, with a specific amount to be determined at the date of trial given ongoing damages suffered;

C. Award Plaintiff punitive damages due to Defendants' willful and wanton conduct in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1;

D. Award Plaintiff its taxable costs pursuant to

E. Award pre- and post-judgment interest at a rate of six percent (6%) pursuant to Va. Code § 6.2-302;

F. Enjoin Defendants, require them to remove the false and defamatory postings, and permanently enjoin them from publishing false and defamatory statements against

Plaintiff; and

G.  Grant such other relief as this Court may consider just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury of the within action, including the complaint, and any further pleadings.

Date: March 22, 2023,                                    Respectfully submitted,

                                                         By Counsel,


                                                         By: /s/   Robert Powers_____
                                                         Robert Powers, Esq.
                                                         Tyler Roth, Esq.
                                                         MCCLANAHAN POWERS, PLLC
                                                         3160 Fairview Park Drive, Suite 410
                                                         Falls Church, VA 22042
                                                         Telephone: (703) 520-1326
                                                         Facsimile:  (703) 828-0205
                                                         Email: rpowers@mcplegal.com
                                                                 troth@mcplegal.com
                                                                 mmurawiec@mcplegal.com

                                                         Dan Artaev, Esq.
                                                         (*Pro Hac Vice* Motion Forthcoming)
                                                         ARTAEV AT LAW PLLC
                                                         28175 Haggerty Rd.
                                                         Novi, MI 48377
                                                         Telephone: (248) 994-7664
                                                         Email: dan@artaevatlaw.com
                                                         *Counsel for Plaintiff*

**VERIFIED COMPLAINT (VERIFICATION)**

State of California        )

City of Sacramento        )

BRAD SAEGER, being duly sworn, deposes and says:

I am an owner of Greenline Express Transportation Inc. ("Plaintiff"). I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as owner for Plaintiff, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records and conversations with Plaintiff's employees.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia and the United States of America that the foregoing is true and correct.

Executed on _____March 1_____, 2023

_Brad Saeger_

_____
BRAD SAEGER

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | Verification for Complaint |
| **File name** | Verificaiton for ...t (Greenline).pdf |
| **Document ID** | e7990dc53ac9782e38ebd2378097d1c83362ca76 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 28 / 2023** 19:36:55 UTC | Sent for signature to Brad Saeger (blsaeger@gmail.com) from dan@artaevatlaw.com IP: 97.78.183.146 |
| **VIEWED** | **03 / 01 / 2023** 19:13:55 UTC | Viewed by Brad Saeger (blsaeger@gmail.com) IP: 98.208.95.181 |
| **SIGNED** | **03 / 01 / 2023** 19:14:45 UTC | Signed by Brad Saeger (blsaeger@gmail.com) IP: 98.208.95.181 |
| **COMPLETED** | **03 / 01 / 2023** 19:14:45 UTC | The document has been completed. |

## <u>CERTIFICATE OF TRANSMISSION</u>

I hereby certify that the forgoing VERFIED COMPLAINT is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: March 22, 2023,                                   By: /s/__Robert Powers
                                                        Robert Powers
                                                        *One of the Attorneys for Plaintiff*